**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GRANT W. KYLE,

                                        Plaintiff,                        5:21-cv-00919 (BKS/ML)

v.

GREEN BIRD, LTD,

                                        Defendant.

**Appearances:**

*For Plaintiff:*
James W. Cunningham
Thomas John DeBernardis
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street, Suite 600
Syracuse, NY 13202-1252

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

        Plaintiff Grant W. Kyle brought this diversity action asserting negligence claims against

Defendants Amazon.com, Inc. and Green Bird, LTD arising out of a sickle that Defendant Green

Bird sold to Plaintiff through Amazon's website. (Dkt. No. 28 (Amended Complaint)).[1]

Defendant Green Bird has not answered the Amended Complaint or otherwise appeared in this

action. Plaintiff moves for a default judgment as to liability against Green Bird under Rule

55(b)(2) of the Federal Rules of Civil Procedure, and requests a hearing to determine the amount

of damages. (Dkt. Nos. 84, 87). For the reasons that follow, that motion is granted.

---

[1] The claims against Amazon were dismissed by stipulation of the parties on January 4, 2023. (Dkt. No. 82).

## II.      FACTUAL BACKGROUND[2]

On or about March 12, 2020, Amazon shipped a waffle maker and a sickle to Plaintiff, a New York resident. (Dkt. No. 28, ¶¶ 2, 8). Defendant was the third-party seller of the sickle. (*Id.* ¶ 9). Defendant is a foreign business corporation, with a principal place of business in Shen Zhen City, Guangdongsheng; Defendant sells products through Amazon's website. (*Id.* ¶¶ 5, 7).

On or about March 14, 2020, Plaintiff opened the package, but the "packaging on the sickle was insufficient and did not properly protect Plaintiff . . . while removing the items from the box." (*Id.* ¶¶ 10, 11). Plaintiff alleges that Defendant "failed to provide any sheathing or other protective equipment or encasing on the sickle," or "any warnings on the sickle or packaging to alert" Plaintiff about "the dangers of the product, namely its sharp blade." (*Id.* ¶¶ 12, 14).

As Plaintiff attempted to remove the items from the box, "two digits of his left hand were sliced by the unprotected blade of the sickle." (*Id.* ¶ 16). As a result, Plaintiff "suffered severe and permanent injuries to his left hand." (*Id.* ¶ 17). Plaintiff alleges that he "has and will continue to suffer great physical and mental pain; severe and permanent scarring of his body; lost wages and medical expenses." (*Id.* ¶ 25).

## III.      DISCUSSION

### A.      Procedural Requirements for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a)

---

[2] Except as otherwise noted, the facts are taken from the Plaintiff's Amended Complaint. (Dkt. No. 28). Because Defendant has failed to respond to the Amended Complaint, the well-pled allegations therein are deemed admitted and assumed to be true for purposes of this Motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded"). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestley*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Here, Plaintiff properly served Defendant, who is located in China, in accordance with Judge Lovric's September 8 text order granting Plaintiff's motion for alternative service. (Dkt. No. 71 (certificate of service); *see* Dkt. No. 67 (September 8, 2022 text order directing Plaintiff to serve Defendant by sending emails to Defendant's representative, Li Xueyin, and Wang Yuling, the individual believed to be a representative of Defendant's insurer, with copies of the Summons, the Amended Complaint, General Order 25, transcripts from the August 12, 2022 telephone conference and September 7, 2022 hearing, and the September 8, 2022 text order)).

On October 21, 2022, Plaintiff filed a Request for Entry of Default against Defendant pursuant to Federal Rule 55(a) and, as required by Local Rule 55.1, submitted an affidavit affirming that Defendant (1) is not an infant, incompetent, or an active-duty member of the United States Armed Forces; (2) was properly served; and (3) has defaulted in this action. (Dkt.

No. 73). On October 27, 2022, Plaintiff received a clerk's entry of default against Defendant. (Dkt. No. 76). On January 11, 2023, Plaintiff moved for default judgment under Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b). (Dkt. No. 84). Plaintiff served the motion on Defendant by mail, (Dkt. No. 85), and Defendant has filed no response. Therefore, Plaintiff has met the procedural requirements and is entitled to an order of default under Rule 55(b)(2) and Local Rule 55.2(b).

### B.    Personal Jurisdiction

On May 25, 2023, the Court issued a text order noting that Plaintiff's motion for default judgment did "not address the issue of whether this Court has personal jurisdiction over" Defendant. (Dkt. No. 86). The Court directed Plaintiff, to the extent he sought to proceed on the motion for default judgment, to "provide evidence and a memorandum of law . . . addressing whether this Court has personal jurisdiction over" Defendant. (*Id.*). On June 13, 2023, Plaintiff submitted a memorandum of law with additional evidence responsive to the Court's text order. (Dkt. No. 87).

Although "a district court should *not* raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court," "when a defendant declines to appear . . . before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (emphasis in original). While the Second Circuit has "left open the question 'whether a district court *must* investigate its personal jurisdiction over [a] defendant before entering a default judgment,'" a "default judgment is 'void' [within the meaning of Federal Rule 60(b)(4)] if it is rendered by a court that lacks jurisdiction over the parties." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133, 138 (2d Cir. 2011) (emphasis in original) (citations omitted); *see also Golden Ring Int'l, Inc. v.*

4

*Cullen*, No. 18-cv-1244, 2019 WL 4015638, at *6, 2019 U.S. Dist. LEXIS 144444, at *15 (N.D.N.Y. Aug. 26, 2019) (noting that "even a full" default judgment is void if rendered by a court lacking jurisdiction and that, "in the context of default," a court may assess personal jurisdiction prior to granting a default judgment "even where personal jurisdiction has not been raised by the parties"); *Weitsman v. Levesque*, No. 17-cv-727, 2019 WL 7503022, at *2–5, 2019 U.S. Dist. LEXIS 225002, at *3–15 (N.D.N.Y. Jan. 11, 2019) (considering personal jurisdiction *sua sponte* on a motion for default judgment as to damages and, after finding lack of personal jurisdiction, vacating prior order granting motion for default judgment as to liability). As Defendant has not appeared in this matter or consented to this Court's jurisdiction, this Court will follow the Second Circuit's guidance and "assure itself" that it may properly exercise jurisdiction over Defendant.

"Specific [personal] jurisdiction exists when 'a [forum] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 673–74 (2d Cir. 2013) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996) (internal quotation omitted)). To evaluate whether it may exercise specific personal jurisdiction over a defendant, the Court first looks to whether it has a "statutory basis" for such jurisdiction under New York's long-arm statute, *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013), and then, "[i]f the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution," *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). In evaluating whether it has personal jurisdiction over the Defendant, the Court may consider evidence outside of the complaint. *See Vasquez v. Hong*

*Kong & Shanghai Banking Corp., Ltd.*, No. 18-cv-1876, 2020 WL 4586729, at *1 n.1, 2020 U.S.
Dist. LEXIS 142607, at *2 n.1 (S.D.N.Y. Aug. 10, 2020).

      Plaintiff argues that the Court may exercise specific personal jurisdiction over Defendant
under N.Y. C.P.L.R. §§ 302(a)(1) and 302(a)(3)(ii). (Dkt. No. 87).[3]

### 1.      Transacting Business – N.Y. C.P.L.R. § 302(a)(1)

      N.Y. C.P.L.R. § 302(a)(1) permits the exercise of jurisdiction over a nondomiciliary who
"transacts any business within the state or contracts anywhere to supply goods or services in the
state." In determining whether personal jurisdiction may be exercised under this provision, "a
court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2)
whether this cause of action 'aris[es] from' such a business transaction." *Licci ex rel. Licci v.
Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (citation omitted). Under
Section 302(a)(1), "[p]roof of one transaction in New York is sufficient to invoke jurisdiction,
even though the defendant never enters New York, so long as the defendant's activities here
were purposeful and there is a substantial relationship between the transaction and the claim
asserted." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloe*,
616 F.3d at 163).

      To determine "whether a defendant who sells through Internet storefronts is subject to
personal jurisdiction, courts distinguish between commercial vendors who use it as a means for
establishing regular business with a remote forum and occasional sellers who use an internet
service once to sell goods to the highest bidder who happens to be in the forum state." *Pearson
Educ., Inc. v. ABC Books LLC*, No. 19-cv-7642, 2020 WL 3547217, at *6, 2020 U.S. Dist.

---

[3] Plaintiff does not argue that the Court may exercise general jurisdiction over Defendant, (*see* Dkt. No. 87), and the
Court sees no basis to do so.

LEXIS 117040, at *18 (S.D.N.Y. June 30, 2020) (internal quotation marks and citations omitted). The Second Circuit has explained that "a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant . . . , through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (alteration in original) (citations omitted).

With his memorandum of law submitted in response to the Court's May 25 text order, Plaintiff has provided the following evidence: (1) a copy of the online receipt from Plaintiff's March 12, 2020 purchase of the sickle on Amazon, which states that the sickle was sold by Defendant and "fulfilled by Amazon," (Dkt. No. 87-1, at 1); (2) photographs of the sickle, its packaging, and Plaintiff's hand injury, (*id.* at 2–7); (3) a copy of Amazon webpage for the sickle, which includes customer reviews and ratings, (*id.* at 8–15); (4) Amazon's interrogatory responses, (Dkt. No. 87-2); and (5) Defendant's certificate of liability insurance, (Dkt. No. 87-3).

In its interrogatory responses Amazon stated that Defendant was the sickle's third-party seller; that Defendant sold the sickle to Plaintiff "using Amazon's website and logistics services"; that Defendant packaged the sickle; and that Defendant sent the already-packaged sickle to an Amazon fulfillment center. (Dkt. No. 87-2). The Amazon product webpage for the sickle includes 36 customer ratings from customers in unknown locations, including 8 reviews from United States customers who reported having purchased the sickle between May 2019 and January 2020. (Dkt. No. 87-1, at 11–14). Defendant's November 2, 2021 Certificate of Liability Insurance states that it has "General Liability" up to $1,000,000 per occurrence; that Amazon is an "additional insured[]"; and that Defendant's "[a]nnual [r]evenue on Amazon" is "CNY

720[,]000," which is equivalent to $112,508.79.[4] (Dkt. No. 87-3, at 1). Plaintiff's Amended

Complaint alleges that Defendant "was and is a third-party seller that utilized Amazon's services

[to sell] certain products through Amazon's website," including "the sickle which Amazon

shipped to [Plaintiff]." (Dkt. No. 28, ¶¶ 7, 9). Plaintiff also alleges that he is a New York resident

and that Amazon shipped the package containing the sickle to him. (*Id.* ¶¶ 1, 8).

On this record the Court finds that Defendant is subject to personal jurisdiction under

Section 302(a)(1). *Eades*, 799 F.3d at 168; *see Poof-Slinky, LLC v. A.S. Plastic Toys Co., Ltd.*,

No. 19-cv-9399, 2020 WL 5350537, at *4, 2020 U.S. Dist. LEXIS 162529, at *10–11 (S.D.N.Y.

Sept. 4, 2020) (finding that the defendants were subject to personal jurisdiction under Section

302(a)(1) where they used highly interactive third-party websites and a company hired by

plaintiff "engaged in at least one transaction with each [] Defendant to purchase allegedly

counterfeit products for shipment to New York"); *see also Carson Optical, Inc. v. RQ*

*Innovasion Inc.*, No. 16-cv-1157, 2020 WL 1516394, at *3, 2020 U.S. Dist. LEXIS 55223, at

*8–9 (E.D.N.Y. Mar. 30, 2020) (explaining that personal "jurisdiction is still proper" under

Section 302(a)(1) "[w]hen the internet sales at issue occur through third-party websites such as

Amazon, and defendants merely post their items on that website and then ship their goods to an

Amazon fulfilment center before Amazon ultimately sends the goods to consumers"). The

evidence that Defendant's annual Amazon revenue, as of November 2021, was $112,508.79, that

Defendant had insurance and named Amazon as an additional insured, and that the sickle's

Amazon webpage included 36 ratings, including 8 reviews from United States customers

---

[4] The Court takes judicial notice of the exchange rate for Chinese yuan to U.S. dollars on November 2, 2021, which is readily determined by reference to the Federal Reserve Bank website. *Foreign Exchange Rates – H.10*, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, https://www.federalreserve.gov/releases/h10/hist/dat00_ch.htm (last visited July 31, 2023); *see Cagan v. Gadman*, No. 08-cv-3710, 2012 WL 5422270, at *7 n.3, 2012 U.S. Dist. LEXIS 162053, at *18 n.3 (E.D.N.Y. Oct. 31, 2012) (taking judicial notice of historic exchange rates).

establishes that Defendant used Amazon to conduct "regular business with a remote forum," and thus the sale of this sickle to Plaintiff in New York was purposeful. *Pearson Educ., Inc.*, 2020 WL 3547217, at *6, 2020 U.S. Dist. LEXIS 117040, at *18; *see Poppington, LLC v. Brooks*, No. 20-cv-8616, 2021 WL 3193023, at *2, 2021 U.S. Dist. LEXIS 140262, at *5–6 (S.D.N.Y. July 27, 2021) (finding that defendant fell "in the [] category of commercial vendors conducting regular business through Amazon," and thus was subject to jurisdiction under 302(a)(1), where "she [sold] her books exclusively through Amazon and estimate[d] that she [] sold 1,500 books through the platform in the last 5 years"). The Court finds that the "transacts business" element of § 302(a)(1) is satisfied.

The evidence also establishes that Plaintiff's claim "aris[es] from" Defendant transacting business in New York. N.Y. C.P.L.R. § 302(a)(1). The "arising from" element does not require "a causal link between the defendant's New York business activity and a plaintiff's injury," but rather "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013) (citation omitted). According to Amazon's interrogatories, Defendant was responsible for packaging the sickle. (Dkt. No. 87-2, at 6). Plaintiff's claim that the insufficient packaging on the sickle resulted in injuries to his hand while removing the sickle from the box plainly arises from Defendant's sale and packaging of the sickle. (Dkt. No. 28, ¶ 16). Therefore, the Court finds that all elements necessary to exercise personal jurisdiction over Defendant N.Y. C.P.L.R. § 302(a)(1) are met here.[5]

---

[5] Because the Court has personal jurisdiction over Defendant under Section 302(a)(1), it does not reach Plaintiff's argument that Defendant is subject to personal jurisdiction under Section 302(a)(3)(ii). (Dkt. No. 87, at 7–8).

### 2.    Due Process Requirements

Plaintiff argues that exercising personal jurisdiction over Defendant comports with due process. (Dkt. No. 87, at 8–12). "Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). This inquiry requires "a two-step analysis." *Id.* (citing *Metro. Life*, 84 F.3d at 567–68). First, the Court must decide whether Defendant "has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.* The minimum contacts inquiry "focuses on the relationship among the defendant, the forum and the litigation." *Walden v. Foire*, 571 U.S. 277, 283–84 (2014) (internal quotations omitted). To determine if a defendant has sufficient contacts with the forum to justify the Court's exercise of specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* Second, the Court must decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life*, 84 F.3d at 568 (quoting *Int'l Shoe*, 326 U.S. at 316).

Here, Plaintiff has asserted that there are sufficient minimum contacts to satisfy Due Process for the same reasons that the requirements of the long-arm statute are satisfied. Plaintiff alleges that Defendant regularly sells products through Amazon, a highly interactive website, and that it sold at least one sickle to New York. *See Poof-Slinky, LLC*, 2020 WL 5350537, at *5, 2020 U.S. Dist. LEXIS 162529, at *14–15 (finding that the plaintiff "asserted sufficient minimum contacts to satisfy Due Process" where it alleged "that the [] Defendants operate[d] highly interactive websites through Alibaba and AliExpress, through which they [could] converse with consumers in New York and sell allegedly infringing products to them, and that

10

they [did] so"). Because Plaintiff has shown minimum contacts, "the exercise of jurisdiction is favored" unless "the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life*, 84 F.3d at 568 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In the absence of any argument by Defendant, the Court perceives no reason why exercising personal jurisdiction over Defendant would be unreasonable under the circumstances of this case. Therefore, the Court finds that it may properly exercise personal jurisdiction over Defendant.

### C.   Liability

Having determined that it may exercise personal jurisdiction over Defendant, the Court turns to the question of whether the Court should enter a default judgment. By failing to appear in this action or respond to Plaintiff's Amended Complaint, Defendant is deemed to have admitted the factual allegations in the Amended Complaint with respect to liability (as distinct from damages). *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."). "The decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citation omitted). Even where a defendant has admitted all well-pleaded facts in the complaint by virtue of default, a district court "need not agree that the alleged facts constitute a valid cause of action," and may decline to enter a default judgment on that ground. *Mickalis Pawn Shop*, 645 F.3d at 137 (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Indeed, the Second Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" *Id.* (citation omitted).

Here the Amended Complaint alleges that Defendant was negligent, citing to its "failure to properly package its products in a safe manner for public use" and "failure to adequately warn,

or provide any warning of the dangers of its products." (Dkt. 28, ¶ 24; *see also* Dkt. No. 84-1, at 2 (Plaintiff's counsel describing this case as involving "a negligently packaged sickle sold by" Defendant)).[6] To prevail on a negligence theory of recovery based on a defective product, a plaintiff must prove that: (1) "the manufacturer or seller in the normal course of business" owed plaintiff a duty to exercise reasonable care, *see Gebo v. Black Clawson Co.*, 92 N.Y.2d 387, 394 (1998); (2) the manufacturer or seller breached "that duty by fail[ing] to use reasonable care so that a product is rendered defective, *i.e.* reasonably certain to be dangerous," *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 82 (S.D.N.Y. 2001) (citation omitted); (3) "the defect was the proximate cause of the plaintiff's injury," *id.*; and (4) the plaintiff sustained "loss or damage," *id.*

More specifically, "[a] manufacturer or seller in the normal course of business has a duty to warn '(1) against latent dangers resulting from foreseeable uses of its product of which it knew or should have known, and (2) of the danger of unintended uses of a product provided these uses are reasonably foreseeable.'" *Roman v. Sprint Nextel Corp.*, No. 12-cv-276, 2014 WL 5026093, at *13, 2014 U.S. Dist. LEXIS 138951, at *36 (S.D.N.Y. Sept. 29, 2014) (quoting *Bee v. Novartis Pharms. Corp.*, 18 F. Supp. 3d 268, 283 (E.D.N.Y. 2014)). *Krulewich v. Covidien, LP*, 498 F. Supp. 3d 566, 576–77 (S.D.N.Y. 2020) (quoting *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011) (summary order)). Further, to prevail on a negligent design defect claim, Plaintiff must show that: "(1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the

---

[6] While the Amended Complaint also mentions "negligently manufacturing" and "marketing" the sickle, (Dkt. No. 28, ¶ 25), there are no factual allegations in the complaint regarding the manufacturing or marketing of the sickle, (*see id.*). Thus, to the extent Plaintiff seeks a default judgment on such theories of negligence, the motion is denied. *See Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.*, 505 F. Supp. 3d 137, 154–58 (N.D.N.Y. 2020) (explaining negligent manufacturing law).

defective design was a substantial factor in causing the plaintiff's injury." *Maxwell v. Howmedica Osteonics Corp.,* 713 F. Supp. 2d 84, 90 n.8 (N.D.N.Y. 2010).

Plaintiff's Amended Complaint alleges Defendant's negligence in failing to warn and failing to safely package the sickle, that Plaintiff's breach was the proximate cause of his injury and that he suffered damages. Plaintiff alleges that there was no "sheathing or other protective equipment or encasing on the sickle so as to protect" Plaintiff "from injury," that Defendant "failed to provide any warnings on the sickle or packaging to alert consumers of the dangers of the product, namely its sharp blade" and that "two digits of his left hand were sliced by the unprotected blade of the sickle" while he was "attempting to remove the items from the box." (Dkt. No. 28, ¶¶ 12, 15–16). Plaintiff has adequately alleged liability based upon Defendant's failure to warn. *See Bee*, 18 F. Supp. 3d at 283 ("Liability for failure to warn may be imposed based upon [] the complete failure to warn of a particular hazard."). Further, Plaintiff has adequately alleged liability based upon Defendant's negligent defective design of the sickle, which includes its packaging. *See Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 206 (E.D.N.Y. 2004) (explaining that plaintiff's allegations "that the packaging used by [defendant] for the [medicine] was not tamper-resistant enough" "assert[ed] liability based upon design defect"). The Court can infer that an alternative, safer design was feasible. *See Ramirez v. Chip Masters, Inc.*, No. 11-cv-5772, 2014 WL 1248043, at *8, 2014 U.S. Dist. LEXIS 40249, at *20 (E.D.N.Y. Mar. 4, 2014) (granting a default judgment for a defective design claim where, "in the absence of contrary evidence, the Court [could] infer that a safer, feasible design alternative existed at the time of manufacture"), *report and recommendation adopted* 2014 WL 1248043, 2014 U.S. Dist. LEXIS 39318 (E.D.N.Y. Mar. 25, 2014).

Accordingly, the Court concludes that Defendant is liable to Plaintiff for negligent failure to warn and negligent design defect.

### D.     Damages

In Plaintiff's motion for default judgment, he requests a hearing to present evidence to determine the amount of damages. (Dkt. No. 84-1, ¶ 18). "[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (second alteration in original) (quoting *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Thus, Plaintiff's request for an evidentiary hearing is granted. Plaintiff is directed to file a memorandum of law two weeks prior to the hearing, addressing the issue of what damages were proximately caused by the Defendant's negligence, and the impact of any settlement with Amazon. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 483–84 (E.D.N.Y. 2013) (discussing the issue of set-off in connection with damages for a default judgment); *Brown v. Gabbidon*, No. 06-8148, 2007 WL 1423788, at *5–6, 2007 U.S. Dist. LEXIS 35134, at *19–20 (S.D.N.Y. May 14, 2007) (discussing the issue of contributory negligence to mitigate damages in a default judgment hearing).

## IV.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Default Judgment (Dkt. No. 84) is **GRANTED** as to Plaintiff's negligent failure to warn claim and negligent design defect claim; and it is further

**ORDERED** that the Court will hold an evidentiary hearing on October 4, 2023, at 10:00 a.m. to determine damages in accordance with this order; and it is further

**ORDERED** that Plaintiff shall file an exhibit list, a witness list, and a memorandum of law, not to exceed twenty pages, by September 20, 2023; and it is further

**ORDERED** that Plaintiff serve a copy of this Memorandum-Decision and Order on Defendant and file a certificate of service.

**IT IS SO ORDERED.**

Dated: August 4, 2023
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge